UNITED STATES DISTRICT COURT
DISTRICT OF MASSCHUSETTS

| | |
|---|---|
| **JARED UHLICH,**<br><br>*Plaintiff,*<br><br>v.<br><br>**R3 EDUCATION, INC., MEDICAL UNIVERSITY OF THE AMERICAS, and JOHN AND JANE DOES 1-100 (in their official and individual capacities),**<br><br>*Defendants.* | Civ. No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jared Uhlich, by and through his counsel, The Law Office of Keith Altman, PLLC, and Nesenoff & Miltenberg, LLP, respectfully alleges, upon knowledge with respect to himself, and upon information and belief, as to all other matters, as follows:

## THE NATURE OF THIS ACTION

1. This case arises out of the wrongful dismissal from the Medical University of the Americas ("MUA" or the "University"), an entity owned by R3 Education, Inc. ("R3").

2. Plaintiff, a veteran of the United States Navy, had his hopes of becoming a Medical Doctor ripped away from him due to the deceptive and unfair actions and inactions of the administration.

3. Plaintiff is seeking damages for Defendants' violations of breach of contract, denial of basic fairness, and unfair trade practice under Mass. Gen. Laws Ch. 93(A).

## THE PARTIES

4. Defendant Medical University of the Americas ("MUA") is a private for-profit medical school.

1

5.      Defendant R3 Education, Inc. ("R3") is a holding company domiciled in Devens, Massachusetts.

6.      Defendant Medical Universities of the Americas ("MUA") was owned by Defendant R3 at all times relevant to this litigation.

7.      Plaintiff Jared Uhlich ("Plaintiff") is a former student of MUA and is a resident of the State of Utah. At the time of the subject matter of this complaint, Plaintiff was a resident of the State of Louisiana.

8.      Does 1-100 ("Does") are employees or agents of Defendant MUA that caused the harms to Plaintiffs subject of this lawsuit. At this time, their names and whereabouts are unknown.

## JURISDICTION AND VENUE

9.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because there is diversity of citizenship between the parties and the amount of controversy exceeds $75,000.

10.     Defendant R3 Education, Inc. owns and manages private educational institutions and is located and/or doing business within the judicial district.

11.     Venue in this action is proper in the District of Massachusetts because Defendant R3 resides in and conducts business in Massachusetts.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12.     Plaintiff earned his bachelor's degree from Northwestern State University in December of 2009.

13.     Prior to obtaining his degree, he served in the United States Navy for several years, including in active combat duty.

14. After working in various fields, he decided to pursue his dream of becoming a medical doctor.

15. Plaintiff obtained acceptance to MUA's Medical Doctor ("M.D.") program.

16. At all times relevant to this litigation, Plaintiff attended MUA and was enrolled in the M.D. program in the Spring of 2012.

17. In 2011, MUA had not yet been approved for Title IV status resulting in federal funding being received. As such, Plaintiff was forced to secure private lending to pay for his tuition.

18. Plaintiff's private lender withdrew and refused to provide funding to any MUA students

19. Without proper funding, Plaintiff was left with no other option and withdrew from MUA after a few weeks of attendance.

20. In August 2018, Plaintiff received an email from MUA notifying him that MUA had secured Title IV status once again and encouraging him to re-enroll in classes.

21. Several weeks later, Plaintiff received an acceptance letter to MUA's M.D. program.

22. Upon Plaintiff's acceptance and re-enrollment, MUA provided him with a copy of the University's Student Handbook (the "Handbook").[1]

23. Upon information and belief, the Handbook contains information on the Student Honor Code, the academic requirements for enrolment, the terms of enrollment, and a process for possible violations and resulting disciplinary action.

---

[1] The MUA Handbook is unavailable for public viewing at the present juncture. However, it is extensively referenced in MUA's publicly available documentation. *See* https://www.mua.edu/uploads/sites/10/2023/12/Student-Consumer-Information-MUA-Nov-2023.pdf.

24. MUA also provided Plaintiff with access to the Handbook during his enrollment.

25. In May 2019, Plaintiff re-enrolled in MUA and attended his required classes in the Fall 2019 and Spring 2020 semesters.

26. During his Spring 2020 semester, MUA's financial aid department contacted Plaintiff to inform him that he was on academic probation, despite passing all of his classes. Plaintiff did not have any other notice as to this status and was surprised to learn of this from the financial aid department.

27. The financial aid department explained that his academic record reflected a lack of credits based on his total enrollment period, which began in Spring 2012.

28. Plaintiff fully withdrew from MUA in 2012, discontinuing his enrollment until he re-enrolled in 2019.

29. In his Summer 2020 semester, Plaintiff successfully completed the necessary coursework but failed his Systems and Disease 3 course due to an erroneous 5% deduction from his grade average.

30. Plaintiff filed a grievance with MUA but was ultimately denied any remedy.

31. Plaintiff was forced to pay the full semester tuition cost (approximately $10,000.00) out-of-pocket to remain in the program and successfully repeat the one failed course in his Fall 2020 semester.

32. On or around November 11, 2020, Plaintiff contacted the MUA financial aid department and was informed that he was considered to be on financial aid and academic probation.

33. MUA advised Plaintiff to wait until the financial aid department reviewed his records, but nothing changed.

34. Later in November of 2020, Plaintiff received an invoice for $17,695.00 due by December 1, 2020.

35. Plaintiff again contacted MUA's financial aid department who again advised him to wait until they reviewed his records.

36. Plaintiff later received a loan rejection email from his financial provider.

37. In August of 2021, MUA notified Plaintiff that he would be dismissed from the M.D. program based upon alleged academic progress.

38. Upon information and belief, Plaintiff learned for the first time that he had been cited with a violation of federal standards of academic performance for two consecutive semesters.

39. Upon information and belief, MUA provided very little information on the alleged violation.

40. MUA, upon information and belief, gave Plaintiff less than 48 hours to appeal the violations with supporting documentation, to explain the failed course in the Summer 2020 semester, approximately one year after its occurrence.

41. Plaintiff informed MUA of his intent to appeal via email.

42. Left with no option but to comport with the expedited timeline, Plaintiff submitted his written appeal.

43. In the midst of this, Hurricane Ida made landfall. See https://www.nhc.noaa.gov/data/tcr/AL092021_Ida.pdf. As Plaintiff resided in Louisiana where Hurricane Ida made landfall, he was consumed with surviving the devastating hurricane.

44. Although MUA scheduled a meeting regarding Plaintiff's appeal, Plaintiff could not attend due to this occurring directly in the middle of Hurricane Ida. The University did not reschedule this meeting.

45. As a result of Hurricane Ida, Plaintiff suffered extensive damage to his home in Louisiana. The damage to Plaintiff's home was so extensive that he ultimately qualified for disaster relief assistance.

46. Separately, MUA's student accounts department informed Plaintiff that his account had been flagged and put on hold.

47. MUA ultimately dismissed Plaintiff from the M.D. program due to non-payment.

48. MUA did not provide Plaintiff with any notice to elaborate and explain his account hold and the dismissal.

49. Plaintiff attempted to contact MUA to further understand the process and inquire about the University's practices. However, MUA staff members repeatedly hung upon the phone on him and ignored his questions.

50. Despite Plaintiff's inquiries, MUA also concealed the identities of management in the process.

51. Plaintiff ultimately decided to transfer to a different university.

52. When Plaintiff attempted to request his official MUA transcript be sent to his new University, MUA sent him multiple false invoices and attempted to what amounts to "ransom" for his transcript.

53. Left with no option, Plaintiff had to expend time and additional funds until MUA conceded and released his transcript.

54. Due to MUA's failure to release Plaintiff's transcript, Plaintiff was forced defer his critical Step 1 Exam. This caused him to be ineligible to progress into clinical rotations at his new university.

55.     As a direct and proximate result of Defendants' conduct, Plaintiff's academic and career prospects, as well as his earning potential, have been severely harmed.

56.     Plaintiff's dreams of medical doctor are all but shattered.

57.     Plaintiff has suffered the loss of educational and professional opportunities, loss of career prospects, and other consequential damages, in addition to experiencing severe emotional distress.

## COUNT I

## VIOLATION OF MASS. GEN. LAW CH § 93 (A)

58.     Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

59.     Massachusetts General Laws Chapter 93 (A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practice in the conduct of any trade or commerce are… unlawful."

60.     There must be a causal connection between the seller's deceptive act and the buyer's injury or loss. M.G.L., c. 93(A).

61.     M.G.L., c. 93(A) defines specific debt collection practices considered to be unfair or deceptive, including: knowingly false representation of the character, extent or amount of the debt and withholding property as collateral on a debt when there is no legal right to do so.

62.     In accordance with M.G.L., c. 93(A), Plaintiff put MUA on notice of the claims to be brought against them with a demand letter.

63.     MUA sought payments from Plaintiff on debt that it knew, or should have known, to be false.

64. MUA deliberately withheld Plaintiff's transcripts to obtain payment with disregard for the status of the debt.

65. MUA further deliberately provided falsified invoices to Plaintiff regarding the status of his debt.

66. As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

67. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## COUNT II

## BREACH OF CONTRACT

68. Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

69. It is well established in Massachusetts that the relationship between a student and college or university is contractual in nature, with the circulars, bulletins, catalogues, and regulations as the materials that comprise the contract. *See Doe v. Trustees of Boston Coll.,* 892 F. 3d 67, 80 (1st Cir. 2018); *Doe v. W. New England Univ.,* 228 F. Supp. 3d 154, 169 (D. Mass. 2017) (internal citations omitted); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 593 (D. Mass. 2016).

70. At all relevant times hereto, a contractual relationship existed between Plaintiff and Defendants MUA and R3.

71. Plaintiff and Defendant MUA entered into a contract by which Defendant MUA offered admission to Plaintiff on specific terms. Defendant MUA is owned and operated by Defendant R3.

72.     Plaintiff applied to and enrolled at MUA and paid associated fees and expenses. Plaintiff did so in reliance on and with the reasonable expectation that, MUA would implement and enforce the provisions and policies set forth in its official publications, including the Handbook.

73.     As a result, an express, or alternatively, a contract implied in law or in fact was formed between the Plaintiff and Defendants MUA and R3.

74.     Massachusetts law in contract interpretation establishes that there is a "standard of reasonable expectation – what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." *Schaer v. Brandeis Univ.*, 735 N.E.2d 373, 378 (Mass. 2000).

75.     The contracts contained the implied covenants of good faith and fair dealing. The contracts also implicitly guaranteed that any actions and/or process would be conducted with basic fairness.

76.     Plaintiff had a reasonable expectation that MUA would not charge false or excessive tuition costs and that they would not attempt to conceal or deceive their students.

77.     Defendants MUA, R3, and the Doe Defendants failed and refused to abide by the contract by failing to meet Plaintiff's reasonable expectations, thereby violating its contract with Plaintiff.

78.     Defendants repeatedly denied Plaintiff explanations and solutions for his financial and academic probation, which cuts against MUA's own articulated statement that "MUA is committed to maintaining the highest standards of integrity, academic performance, professional behavior, and respect for each other as individuals."

79. Defendants charged Plaintiff for a full-time tuition when Plaintiff only enrolled for one credit during the Fall semester.

80. Pursuant to the MUA 2020-2022 Catalog, a part-time tuition is charged at $690.00 per credit hour. Plaintiff should have been considered a part-time student for only one course (11 credit hours; approximately $7,590.00).

81. Defendants also failed to provide Plaintiff with the process articulated in its Handbook regarding Plaintiff's purported dismissal.

82. Upon information and belief, MUA's Handbook provides guidance on the terms of enrollment—including academic performance—and provides express guidelines by which a student must be notified, and by who, should they be charged with an alleged violation of the academic performance expectations.

83. Upon further information and belief, MUA's Handbook provides guidelines on the process by which a student can contest and/or appeal a decision related to dismissal and/or academic performance.

84. Defendants failed to provide Plaintiff with proper notice or the process provided in the Handbook regarding his dismissal.

85. Most notably, Defendants unfairly provided Plaintiff less than 48 hours to submit his ever-important appeal and also did not reschedule his appeal meeting despite him being in the midst of surviving Hurricane Ida.

86. As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

87. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## COUNT IV

## DENIAL OF BASIC FAIRNESS

88. Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

89. "A covenant of good faith and fair dealing is implied in every contract and a university has an obligation to adhere to this covenant when dealing with its students." *Doe v. Harvard Univ.,* 462 F. Supp. 3d 51, 66 (D. Mass. 2020) (citing *Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 87 (1st Cir. 2018)).

90. Massachusetts courts have held as part of the implied covenant of good faith and fair dealing that school disciplinary hearings must be "conducted with basic fairness." *Cloud v. Trs. of Bos. Univ.,* 720 F.2d 721, 725 (1st Cir. 1983) (citing *Coveney v. President & Trs. of Holy Cross Coll.,* 445 N.E.2d 136, 139 (Mass. 1983)); *Schaer v. Brandeis Univ.,* 735 N.E.2d 373, 380 (Mass. 2000); *Doe v. Harvard Univ.*, 462 F. Supp. 3d at 66.

91. Additionally, a private university may not act "arbitrarily or capriciously" in disciplining a student. *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 600 (D. Mass. 2016).

92. As demonstrated above (see Count II) Plaintiff and Defendants MUA and R3 engaged in a contractual relationship.

93. Defendants had a duty, either an express or implied contract, as a matter of common law, to ensure that the University conducted the process to dismiss Plaintiff in good faith with basic fairness.

94. In addition to the breaches of contract discussed above, which are expressly incorporated herein, Defendants failed to provide Plaintiff with basic fairness which resulted in Plaintiff's improper dismissal from MUA.

95. Defendants unfairly failed to provide a rescheduled appeal meeting for Plaintiff, who was in the midst of surviving Hurricane Ida.

96. The Defendants also unfairly did not provide Plaintiff with proper notice of any alleged failure to meet the University's academic standards.

97. As a consequence of the above failures, MUA wrongly dismissed Plaintiff. However, it was clear that if Defendant delivered on their promises and prescribed procedure, Plaintiff would have remained enrolled at MUA.

98. As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

99. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff demands a judgment against the Defendants as follows:

(i) On the first cause of action for a violation of M.G.L., c. 93(A): judgment against Defendants and in favor of Plaintiff for actual damages for financial loss and punitive damages in an amount to be determined at trial and as are allowed under the statute, judgment against Defendants and in favor of Plaintiff for an injunction prohibiting Defendants' wrongful conduct,

and judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with this action, including attorneys' fees;

(ii) On the second cause of action for breach of contract: judgment against Defendants Defendant and in favor of Plaintiff for damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest attorneys' fees, expenses, costs and disbursements;

(iii) On the third cause of action for denial of basic fairness: judgment against Defendants and in favor of Plaintiff for damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest attorneys' fees, expenses, costs and disbursements; and

(iv) Grant any other and further relief as justice so requires and the Court finds proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

**Dated: August 14, 2024**                  Respectfully Submitted,

*Attorneys for Plaintiff Jared Uhlich*

THE LAW OFFICE OF KEITH ALTMAN

**Keith Altman, Esq.**
(*pro hac vice* **forthcoming**)
**33228 West 12 Mile Road, Suite 375**
**Farmington Hills, Michigan 48331**
**(248) 987-8929**
**keithaltman@kaltmanlaw.com**

**NESENOFF & MILTENBERG, LLP**

/s/ *Regina M. Federico*
**Andrew T. Miltenberg, Esq.**
(*Pro Hac Vice* **Forthcoming**)
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**

**Regina M. Federico (BBO No. 700099)**
**101 Federal Street, 19th Floor**
**Boston, Massachusetts 02110**
**(617) 209-2188**
**rfederico@nmllplaw.com**